IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROGER STANFORD,  :<br>  :<br>     Plaintiff,  :<br>   v.  :   CIVIL ACTION<br>  :<br>  :   NO. 11-7144<br>  :<br>NATIONAL GRANGE INSURANCE  :<br>COMPANY,  :<br>  :<br>     Defendant.  :  | |

**MEMORANDUM OPINION**

**Tucker, C.J.**                                                                                        November ___, 2014

Plaintiff Roger Stanford ("Stanford") brings this action against Defendant National Grange Mutual Insurance Company ("NGM") alleging bad faith and breach of contract arising from NGM's alleged delay in paying to Stanford the proceeds of a successful prosecution of a claim for uninsured motorist benefits. Before this Court is NGM's Motion for Summary Judgment (Doc. 70), NGM's Amended Brief in Support (Doc. 76), Stanford's Response[1] (Doc. 79), NGM's Reply (Doc. 82), and Stanford's Surreply (Doc. 83). Upon consideration of the briefs and attached exhibits, the Court grants NGM's Motion for Summary Judgment.

**I.   BACKGROUND[2]**

---

[1] Stanford referred to his Response as an "Answer."

[2] NGM avers that the factual assertions in its brief must be admitted pursuant to Federal Rule of Civil Procedure 56(e)(2) because Stanford failed to cite to particular parts of the record to negate NGM's assertions. Indeed, Stanford's response to NGM's motion for summary judgment contains no citations to the record. In his Surreply, Stanford counters that Rule 56 "requires only that the opponent of the motion refute relevant assertions of 'undisputed' fact with contrary facts, by way of affidavit, material in the record or the absence of material from the record." (Doc. 81-1, at 3). This Court agrees with NGM's characterization of Rule 56 and thus deems NGM's factual assertions admitted to the extent that they are consistent with the record.

Federal Rule of Civil Procedure 56(c)(1) imposes a requirement upon a party to address the supported factual assertions made by another party. *See* FED. R. CIV. P. 56(c)(1); *accord* FED. R. CIV. P. 56(e) (giving the court discretion to consider facts as undisputed "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact *as required by Rule 56(c)*") (emphasis added). Rule 56(c)(1)

1

On November 3, 1997, Stanford was injured in a two-vehicle automobile accident. Def.'s Mot. for Summ. J. ¶¶ 14, 33. At the time of the accident, Stanford had a Delaware driver's license and residence, and was insured under a Delaware insurance policy issued by NGM. *Id.* at ¶¶ 18–19, 31. Stanford's policy provided Uninsured Motorist (UM) and Underinsured Motorist (UIM) coverages. *Id.* at ¶ 20. These coverages had a policy limit of $25,000 per person or $50,000 per accident stacked for two vehicles. *Id.* at ¶ 20. In order to sustain a claim under the policy, Stanford was required to submit to "examinations under oath" (EUO) and medical examinations "as often as [NGM] reasonably require[s]." *Id.* at ¶ 23.

Soon after the accident, Stanford submitted a claim under the policy. *Id.* at ¶ 34. On November 11, 1997, and several times afterward, NGM requested that Stanford provide it an EUO pursuant to the policy.[3] *Id.* at ¶¶ 39, 44, 59. Stanford failed to undergo an EUO despite several requests over a five-year period. *Id.* at ¶ 80. On December 16, 2002, Stanford finally submitted to an EUO. *Id.* at ¶ 94. During the EUO, Stanford refused to answer questions that were necessary and material to NGM's adjustment of Stanford's claim. *Id.* at ¶ 96.

---

provides, in pertinent part, that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to *particular parts of materials in the record*," or "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1) (emphasis added).
    When a party fails to properly address another party's factual assertion, the court may:
        (1) give an opportunity to properly support or address the fact;
        (2) consider the fact undisputed for purposes of the motion;
        (3) grant summary judgment if the motion and supporting materials--including
        the facts considered undisputed--show that the movant is entitled to it; or
        (4) issue any other appropriate order.
FED. R. CIV. P. 56(e). Here, Stanford's response contains no citations to particular parts of materials in the record. Indeed, it contains no record citations at all. Instead, Stanford appended one hundred unlabeled documents to its response. (Doc. 79, at 13–113). NGM noted the deficiencies in Stanford's brief in its Reply. Stanford thus had an opportunity to adequately address NGM's factual assertions when he filed his Surreply, but he failed to do so. Accordingly, this Court deems NGM's factual assertions undisputed for the purposes of this motion. *See* FED. R. CIV. P. 56(e)(2). This Court, however, has reviewed the materials cited by NGM, and it will rely on those materials to the extent that they conflict with NGM's factual assertions.

[3] NGM requested the EUO because there was "a liability claim being made against Mr. Stanford by the driver of the other vehicle." (Doc. 79, at 49).

NGM also asked Stanford several times to submit to a medical examination pursuant to the policy. *Id.* at ¶¶ 65, 72. Stanford did not attend any medical examination. *Id.* at ¶ 80. The requested EUO and medical examination were necessary to NGM's handling of Stanford's claim. *Id.* at ¶ 82. NGM ultimately closed Stanford's file because Stanford failed to cooperate under the terms of the policy and because Stanford's file had been inactive for six months. *Id.* at ¶ 83.

On or about April 6, 2001, Stanford filed a petition in the Court of Common Pleas of Philadelphia County to compel arbitration under the policy. *Id.* at ¶ 84.[4] NGM opposed the petition on the grounds that arbitration should take place in Delaware. *Id.* at ¶ 87. On June 20, 2001, the court ruled that the arbitration panel should decide the proper venue, and it appointed an arbitrator from Delaware.[5] *Id.* at ¶ 88.

About two months after the court's order, NGM appointed an arbitrator pursuant to the policy. *Id.* at ¶ 90. As of June 2002, almost a year after the court's decision, Stanford had still not appointed an arbitrator. *Id.* at ¶ 93. Arbitration was ultimately scheduled for April 2004, but it was continued due to the failure of Stanford's former counsel, Allen Feingold, to produce Stanford's arbitration exhibits in a timely manner. *Id.* at ¶ 112.

From approximately mid-2004 to May 2011, NGM did not receive any correspondence from Stanford, nor did it receive any responses to requests for information. *Id.* at ¶ 111. In

---

[4] The policy's UM coverage provided for arbitration in the event of a dispute as to the amount of damages. *Id.* at ¶ 26.

[5] The court's order provides, in pertinent part,

> When a Petition to Compel Arbitration is contested, as in the present case, a Court's role is limited to determining "(1) whether an agreement to arbitrate was entered into and (2) whether the dispute involved comes within the ambit of the arbitration provision." Once it is determined that a dispute is arbitrable, the arbitrators have the "authority to decide all matters necessary to dispose of the claim." . . . . The Pennsylvania Superior Court has concluded that disputes as to venue should be resolved by the arbitrators.

Def.'s Ex. 15, Brooks 0143 (citations omitted).

February 2005, the arbitrators closed their file due to inactivity and lack of response from Stanford's counsel. *Id.* at ¶ 115. In June 2006 and March 2007, NGM's counsel and NGM, respectively, closed their files on Stanford due to inactivity and lack of communication from Stanford's counsel. *Id.* at ¶¶ 117–18.

On March 3, 2006, Mr. Feingold was suspended from the practice of law for three years. *Id.* at ¶ 102. He was ultimately disbarred in 2008. *Id.* at 109. On or about May 2011, Stanford retained new counsel and renewed his demand for arbitration. *Id.* at ¶ 119. In August 2011, NGM's counsel, Norman Brooks ("Attorney Brooks"), solicited a settlement demand from Stanford's new counsel. *Id.* at ¶ 121. In response, Stanford demanded $50,000. *Id.* at ¶ 122. NGM rejected this offer.

During Attorney Brooks' conversation with Stanford's counsel, Attorney Brooks learned for the first time that Stanford took the position that Pennsylvania law, not Delaware law, applied to the interpretation of the policy and the application of UM/UIM benefits. *Id.* at ¶ 124. Under Delaware law, Stanford was only entitled to a maximum of $25,000. *Id.* at ¶¶ 125–26. Under Pennsylvania law, Stanford was entitled to as much as $50,000. *Id.* at ¶ 127.

Arbitration occurred in Delaware on August 23, 2011. *Id.* at ¶ 129. Prior to the proceeding, NGM offered Stanford $10,000 to settle Stanford's claim, but Stanford rejected the offer. *Id.* at ¶ 128.

During arbitration, the parties disputed whether the policy should be interpreted under Pennsylvania or Delaware law. *Id.* at ¶ 130. The following day, one of the arbitrators faxed a letter to the parties stating that Delaware law controlled the issue of whether Stanford was entitled to UIM benefits. *Id.* at ¶ 132. The letter also provided that Delaware Code prohibited the

stacking of UM or UIM coverages. *Id.* The arbitrators invited the parties to notify the arbitrators if they "stated the law wrong." *Id.* at Ex. 25, Brooks 3471.

On October 5, 2011, the arbitrators found in favor of Stanford. Def.'s Mot. for Summ. J. ¶ 134. The arbitrators ruled that Pennsylvania law—which permits stacking—applied. *Id.* at ¶¶ 134–35. The arbitrators awarded Stanford $50,000 in UM benefits—$25,000 more than what is permitted under Delaware law. *Id.*

Following the award, NGM considered its appellate options, i.e. whether it would seek to vacate the award under Delaware procedure. *Id.* at ¶ 136. Under Delaware law, NGM had ninety days to do so. *Id.*

On October 12, 2011, however, Stanford filed a motion to confirm the arbitration award in the Court of Common Pleas of Philadelphia County.[6] *Id.* at ¶ 137. Upon receipt of this motion, NGM began considering its appellate options under Pennsylvania procedure, which had a different standard for seeking to vacate an arbitration award. *Id.* at ¶ 138, 149. Under Pennsylvania arbitration practice, NGM had thirty days to appeal the arbitration award. *Id.* at ¶ 139. Under Pennsylvania law, the final day to appeal was November 7, 2011 because the final day to appeal, November 5, 2011, fell on a Saturday. *See* 1 Pa.C.S. § 1908 (indicating that Saturdays and Sundays must be omitted from the time computation where the final day of the computation falls on either of those days).

On October 31, 2011, NGM concluded that it would not appeal the award. *Id.* at ¶ 140. NGM did not file a response to Stanford's motion. Instead, on November 3, Stanford's counsel called Attorney Brooks to inquire about the outstanding arbitration award. *Id.* at Ex. 29, CL1000. According to Stanford's counsel, Attorney Brooks said

---

[6] Stanford avers that he was forced to file this motion because NGM refused to pay the arbitration award until Stanford signed a release. (Doc. 79, at 16–17).

> that he wanted [Stanford] to sign a release, before we could have the check and that he would call me back tomorrow to see if I objected, even though I told him that . . . I objected and there would be no such document, since this case was not settled, but won at arbitration.

*Id.* On Friday November 4, 2011—one day before the conclusion of the thirty-day appeal period—NGM delivered a check for $50,000 to Stanford's counsel. Def.'s Mot. for Summ. J. at ¶¶ 142–43. Included with the check was a draft release and settlement agreement that sought to release NGM "from all uninsured/underinsured motorist coverage benefits claims which have resulted or may in the future develop [from the accident]." *Id.* at Ex. 30, Brooks 3632. The check contained the written annotation that it was "in settlement of any & all claims." *Id.* at Ex. 30, Brooks 3630. The cover letter to the check and release provided as follows

> Enclosed please find [NGM's] draft in the amount of [$50,000], which I am conditionally delivering to you as an officer of the Court. The delivery of this draft is conditioned upon your client signing the enclosed Release in unaltered form, and the document being returned to me prior to disbursement. You are not authorized to disburse any funds until all conditions have been satisfied.

*Id.* at Ex. 30, Brooks 3631. Attorney Brooks testified that providing a release and settlement check was standard practice in Delaware. Def.'s Mot. for Summ. J. at ¶ 145. Stanford failed to provide any evidence to the contrary.

Stanford's counsel again objected to the release, and also objected to the "settlement" language on the check.[7] *Id.* at ¶¶ 146–47. Internal emails between NGM employees, dated

---

[7] Attached to Stanford's Response is a "Verification" signed by Stanford's counsel, Elliot Tolan, and Stanford's former counsel, Allen Feingold. (Doc. 79, at 12–113). The Verification contains fifty separate paragraphs of allegations. Both Stanford's counsel and Mr. Feingold aver that these allegations are "of my own knowledge and is true and correct upon my belief." (Doc. 79, at 112–13). Paragraph 32 of the Verification provides that "NGM . . . refused to pay the arbitration award until [Stanford] signed a release, even though he had won his case, not settled it." (Doc. 79, at 16). It is undisputed, however, that NGM did in fact pay the arbitration award without requiring Stanford to sign a release. Def.'s Mot. for Summ. J. at ¶¶ 144–47.

Monday, November 7, 2011, indicate that NGM would reissue a check with corrected language that stated, "satisfaction of UM Arbitration Award," and send it via overnight mail that day. *Id.* at Ex. 31, CL1010. Stanford's counsel received the check the following day, November 8, 2011, one day after the deadline to appeal. Def's Mot. for Summ. J. at ¶ 148.

On November 15, 2011, Stanford and Mr. Feingold filed a Complaint in this court against NGM and others, alleging bad faith and breach of contract. On January 30, 2012, Stanford filed an Amended Complaint, excluding Mr. Feingold as a named plaintiff. The remaining Defendant in this case is NGM.

## II.   STANDARD OF REVIEW

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the evidence." *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014).

"[T]he nonmoving party must point to some evidence in the record that creates a genuine issue of material fact. . . . [It] cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). Rather, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to *particular parts of materials in the record*," or "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1) (emphasis added).

### III.   DISCUSSION

#### A.  Bad Faith

Count I of Stanford's Amended Complaint alleges a claim for bad faith under Pennsylvania insurance bad faith statute, 42 Pa. C.S. § 8371. Stanford requests that the Court award him all unpaid benefits, interest, and punitive damages. On February 28, 2014, this Court held that Stanford's bad faith claim is governed by Delaware law. (Doc. 64). Accordingly, the Court will assess Stanford's bad faith claim under Delaware law consistent with its Order.

"[A] cause of action for the bad faith delay, or the nonpayment, of an insured's claim in a first-party insured-insurer relationship is cognizable under Delaware law as a breach of contractual obligations." *D'Orazio v. Hartford Ins. Co.*, No. 09-CV-0403, 2011 WL 1756004, at *4 (E.D. Pa. May 6, 2011) (quoting *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 256 (Del. 1995)). "[I]n order to establish 'bad-faith' the plaintiff must show that the insurer's refusal to honor its contractual obligation was clearly without any reasonable justification." *Id.* (quoting *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 369 (Del. Super. Ct. 1982)). "The ultimate question is whether at the time the insurer denied liability, there existed a set of facts or circumstances known to the insurer which created a bona fide dispute and therefore a meritorious defense to the insurer's liability." *Id.*

"At the summary judgment stage, 'the question of bad faith refusal to pay should not be submitted to the jury unless it appears that the insurer did not have reasonable grounds for relying upon its defense to liability.'" *Id.* (quoting *Casson*, 455 A.2d at 369). Similarly, "where at the time of denial of benefits there was a bona fide dispute as to whether all contractual conditions had been complied with, [an insurer has] reasonable grounds for relying on its defense to liability." *Id.* at *5 (quoting *Baker v. State Farm Mut. Auto. Ins. Co.*, No. 91C–08–001, 1993

Del. Super. LEXIS 221, at *8 (June 30, 1993)). "Mere delay is not evidence of bad faith, provided that a reasonable justification exists for refusing to make payment upon submission of proof of loss." *Id.* at *4 (quoting *Tackett*, 653 A.2d at 266).

Punitive damages are recoverable in a bad faith action "if the insurer's breach is particularly egregious." *Maccari v. Bituminous Cas. Corp.*, No. C.A. 09-258 OMS, 2010 WL 4959946, at *8 (D. Del. Dec. 1, 2010) (quoting *Tackett*, 653 A.2d at 265). The insurer's denial or delay must be "wilful [sic] or malicious." *Id.* at 266 (quoting *Jardel Co. v. Hughes*, 523 A.2d 518, 529 (Del. 1987)). "In the latter event, there must be an element of malice with a 'reckless indifference' to the plight of the insured." *Id.* (quoting *Jardel*, 523 A.2d at 529).

In *D'Orazio*, the plaintiff sought wage loss benefits from the defendant insurer pursuant to an insurance policy for personal injury protection. *D'Orazio*, 2011 WL 1756004, at *2. The policy required the plaintiff to submit documentation to support her contention that she was medically unable to work. *Id.* at *2, n.2. The insurer requested this information, but the plaintiff failed to respond. *Id.* at *2, 5. Accordingly, the court granted summary judgment to the defendant because the defendant had reasonable grounds to believe that the plaintiff had not complied with the contractual conditions of the policy. *Id.* at *5.

Stanford raises four discernible reasons for why the Court should conclude that NGM acted in bad faith: (1) NGM delayed in handling Stanford's UIM claim by requesting that Stanford submit to an EUO and medical examination; (2) NGM's $10,000 pre-arbitration settlement offer was inadequate and made in bad faith; (3) NGM delayed payment of the arbitration award; and (4) NGM acted in bad faith by conditioning the payment of the arbitration award on Stanford signing a waiver of claims arising from the accident.

9

Here, the insurance policy required Stanford to submit to EUOs and medical examinations.[8] Stanford repeatedly refused to submit to EUOs and medical examinations. In 2002, when Stanford finally submitted to an EUO, he refused to answer questions that were necessary and material to NGM's adjustment of his claim. Additionally, Stanford never submitted to a medical examination even though such an examination was necessary for NGM's assessment of Stanford's claim. *See* Def.'s Mot. for Summ. J. ¶¶ 80, 82. From mid-2004 to May 2011, NGM did not receive any correspondence from Stanford. In 2007, NGM closed Stanford's file. Accordingly, to the extent that Stanford contends that NGM's investigation of or delay in making an offer to settle the claim was in bad faith, NGM had a reasonable ground for doing so: NGM believed that Stanford failed to comply with the insurance policy requirements.

Stanford's argument that NGM's $10,000 pre-arbitration settlement offer was made in bad faith also fails because NGM had reasonable grounds for limiting its demand to $10,000. At the time of the accident, Stanford had a Delaware residence and driver's license. As a result, NGM believed that Stanford's UM/UIM claim would be governed by Delaware law. Under Delaware law, the stacking of UM and UIM benefits is prohibited. *See* 18 Del. Code § 3902(c). Accordingly, if Delaware law applied to the arbitration proceeding, Stanford would have been entitled to a maximum of $25,000 in UM/UIM benefits, not $50,000. NGM's belief that Delaware law applied to Stanford's UM/UIM claim is further bolstered by the fact that the arbitrators issued an interim ruling as to the choice of law issues and held that Stanford's UIM benefits would be controlled by Delaware law. Def.'s Mot. for Summ. J. ¶ 132. Accordingly, NGM reasonably refused to satisfy Stanford's demand for $50,000 to settle his claims.

---

[8] NGM had reasonable grounds for requiring Stanford to submit to an EUO and medical examination because the policy expressly permitted NGM to do so "as often as [NGM] reasonably require[s]." Def.'s Mot. for Summ. J. ¶ 23. Stanford has failed to point to any evidence demonstrating that these requests were patently unreasonable.

Similarly, NGM had reasonable grounds for delaying payment of the arbitration award. After the arbitrators issued their decision in October 2011, NGM considered its appellate options under both Delaware and Pennsylvania law. *See* Def.'s Mot. for Summ. J. ¶¶ 136, 138. Under Delaware law, NGM had ninety days to appeal the award. *See* 10 Del. Code § 5714(b). Under Pennsylvania law, NGM had thirty days to appeal the award. *See Snyder v. Cress*, 791 A.2d 1198, 1201 (Pa. Super. Ct. 2002) (stating that "any challenge to an arbitration award must be made in an appeal to the Court of Common Pleas within 30 days of the date of the award").

The deadline for filing an appeal under Pennsylvania law was Monday, November 7, 2011. NGM elected not to appeal the arbitration decision and issued Stanford a check and release on Friday, November 4, 2011. Upon receipt of the check and release, Stanford objected to the release requirement and the language on the check, which indicated that the check was in "settlement" of Stanford's claims. Def.'s Mot. for Summ. J., Ex. 30, Brooks 3630.

On Monday, November 7, 2011, NGM employees prepared a new check with corrected language ("satisfaction of UM Arbitration Award") and sent it via overnight mail to Stanford's counsel that same day. *Id.* at Ex. 31, CL1010. Stanford's counsel received the check the following day, November 8, 2011, one day after the deadline to appeal. Def's Mot. for Summ. J. at ¶ 148.

The above chronology demonstrates that NGM's delay in delivering the arbitration award was due to Stanford's initial objection to the check and release. NGM's internal correspondence demonstrates that NGM promptly addressed Stanford's objection and reissued a check on the deadline to appeal the arbitration award. *See* Def.'s Mot. for Summ. J., at Ex. 31, CL1010. Stanford's counsel received the check the following day. The mere fact that NGM issued the check one day after the deadline to appeal is insufficient to demonstrate bad faith because NGM

had a reasonable justification for the delay. *See D'Orazio*, 2011 WL 1756004, at *4 (stating that mere delay is insufficient to demonstrate bad faith provided that a reasonable justification exists). In light of these circumstances, the Court concludes that NGM's delay in delivering the arbitration award was reasonable.[9]

Stanford's remaining argument—that NGM acted in bad faith by conditioning the payment of the arbitration award on Stanford signing a release—also fails. When NGM originally issued the check and release to Stanford, the cover letter indicated that Stanford could not use the check unless Stanford also signed the release. After Stanford objected to this condition, NGM promptly reissued a check and eliminated any requirement that Stanford sign a release. Stanford's counsel, Attorney Brooks, testified that providing a release and settlement check was standard practice in Delaware. Def.'s Mot. for Summ. J. at ¶ 145. NGM had a reasonable ground for initially conditioning the arbitration award on Stanford signing a release since it relied on this practice. Stanford failed to provide any evidence that this was not Delaware practice.[10]

---

[9] Stanford contends NGM's failure to respond to Stanford's motion to confirm the arbitration award in the court of common pleas is evidence of NGM's bad faith. Specifically, Stanford argues that he was "forced" to file this motion because NGM refused to pay the arbitration award until Stanford signed a release. (Doc. 79, at 16–17). NGM's failure to respond to Stanford's motion, however, is immaterial because his motion was premature under 42 Pa. C.S. § 7432(b). This section provides, in pertinent part, "On application of a party *made more than 30 days after an award is made* by an arbitrator under section 7341 (relating to common law arbitration) the court shall enter an order confirming the award and shall enter a judgment or decree in conformity with the order." 42 Pa. C. S. § 7342(b) (emphasis added). Stanford filed this motion within thirty days of the arbitration award. Accordingly, it was premature and required no response from NGM.

[10] Stanford claims that the release was contrary to Delaware Code, which "expressly forbids the conditioning payment of claims upon receipt of unnecessary forms." (Doc. 83-1, at 3). In support, Stanford cites 18 Del. Code 2304(16)(l). This provides as follows:

> Unfair claim settlement practices.--No person shall commit or perform with
> such frequency as to indicate a general business practice any of the following: . .
> . (l) Delaying the investigation or payment of claims by requiring an insured . . .
> to submit a preliminary claim report and then requiring the subsequent
> submission of formal proof of loss forms, both of which submissions contain
> substantially the same information.

### B. Breach of Contract

Count II of the Amended Complaint alleges that NGM breached its contract with Stanford in handling Stanford's claim. This Court previously held that Stanford's breach of contract claim is governed by Pennsylvania law. (Doc. 64). Stanford's breach of contract claim fails for the reasons provided below.

In Pennsylvania, a party asserting a breach of contract must demonstrate "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). "An action for breach of an insurance contract does not lie when the policy proceeds have been paid" because in such cases, an insured cannot establish damages under the contract. *Oehlmann v. Metro. Life Ins. Co.*, 644 F. Supp. 2d 521, 533 (M.D. Pa. 2007); *see also Amitia v. Nationwide Mut. Ins. Co.*, No. 3:08CV335, 2009 WL 111578, at *3 (M.D. Pa. Jan. 15, 2009) ("This rule exists presumably because there are no damages if the full benefits have been paid under the contract—plaintiffs have received everything they were due under the contract."). Here, Stanford's breach of contract claim fails because NGM did in fact pay Stanford the limits under the policy—$50,000. *See Oehlmann*, 644 F. Supp. 2d at 533. Accordingly, Stanford suffered no damages under the insurance contract. *See Amitia*, 2009 WL 111578, at *3.

Stanford also argues that NGM breached its fiduciary duty to Stanford. However, this argument fails because NGM had no fiduciary duty to Stanford. In Pennsylvania, a fiduciary duty "does not arise from an insurance contract until an insurer asserts a stated right under the policy to handle all claims asserted against the insured." *Keefe v. Prudential Prop. & Cas. Ins.*

---

18 Del. Code 2304(16)(l). This provision, however, simply does not forbid the practice of proposing, or even requiring, an insured to sign a release.

*Co.*, 203 F.3d 218, 227–28 (3d Cir. 2000). Here, there is no evidence that NGM asserted any right to handle claims made against Stanford. Accordingly, NGM did not have a fiduciary duty to Stanford. *See id.*

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Defendant National Grange Mutual Insurance Company's Motion for Summary Judgment. An appropriate order follows.